Good morning, your honors. This case is one that involves the question of can seven prior warrants of removal be properly introduced into evidence to prove that a defendant speaks English. The warrants of removal were written in English. The defendant returned was on trial for returning to the country illegally. And when that issue came up, the defendant stipulated offered to stipulate that he speaks English. Would you ask for limiting instruction on the use of the seven prior deportations? Because that would have lessened any prejudice from this evidence coming in. No, your honor, I did not. And I felt that limiting instruction only even further emphasizes the fact of seven prior illegal entries. And it's a hard call to make. You never know. It is, but so that was a trial strategy decision that you made. Yes, it was a strategy decision not to ask for limiting. As was asking the question in the first place. Asking the question... What was the point of the question? It was of course... As to whether the instructions to your client were given to him in just in English. It raises the issue of does he understand what he's being told. And that's the reason then the judge allowed the seven priors, correct? To go to knowledge? Actually, your honor, that's a complicated question. Because there was a stipulation. When I asked the question, are these forms written in English? And the answer was yes. It developed that seven priors might come into evidence. To avoid that situation, I stipulated or offered to stipulate, which is all I can do. But you said you asked the question not to prove your client could speak English, but as to whether he understood whether he was allowed to return to the country. And my understanding is then that's why the district court allowed the seven priors, not on the issue of whether your client can speak English, as whether or not he understood that he had knowledge that he couldn't return to the country. I have to disagree with your honor and say that initially, in support of my position, initially the trial judge said we're offering these seven prior warrants to show that he speaks English. And I pointed out that if you tell a person in a language he doesn't understand over and over again the same thing, it's not going to make him understand that language. It's like the old joke of the tourist going to another country and asking the question in a louder and louder tone. It just doesn't lead to an understanding of a language that he might not understand. The court then basically changed its reason somewhat for why these seven warrants were allowed and changed it to Mr. Urena must have gotten the idea at some point that he wasn't supposed to return to the country. But I'd suggest to the court that that's a very ambiguous thing to be using it to prove. I mean, what is that statement showing? If we look at the test for admission of evidence under 404B, is it relevant? Is the first question that's asked in Gomez. So really the first question we have to address is why were these seven warrants admitted? And I have trouble addressing that. I think initially, I think it's clear. It's for English. So he knows English. Okay. So that's the reason they're admitted. But then when I counter with, well, if you just repeated a statement over and over in English, that doesn't show somebody knows English. It doesn't show anything. The court changes it. So then now it's to show that he knows he's not supposed to come back into the country, that he keeps coming back and maybe he'll get the idea he's not supposed to come back into the country. Seems to me that is propensity evidence. It's kind of like saying once a drug dealer, always a drug dealer. And really, I guess it comes down to the court's interpretation. But, again, if we apply the relevance test to he's coming back over and over, maybe he'll get the idea. What particular 404B item is that addressing? Mr. Kinney, what I'm having trouble with is if you were willing to stipulate that your client understood English, how does it help you at trial to ask the witness if the instructions were in English? And his answer is yes. How does that? So I saw the point as being to raise a question as to whether he would know that he couldn't return to the country. But you're explaining otherwise. I think it's a fair question because this person was very limited in English, I think. But the other half of it is one is entitled to present a defense. Okay. I mean, I'm not supposed to walk into a courtroom and just sit there and listen to me. I completely agree with that. One has to do what he can. And there is always a risk when a question is asked that something else bad will happen. And in this case, the something else bad is the seven priors. Well, I'd point out that that's really excessive, that it was no longer needed. A classic example is the old chief case, the Supreme Court case, that if there's a stipulation, it takes away the things that needs to be proved, and that it was really used as propensity evidence. It's further shown by how the government used the evidence. A closing argument, they said this is somebody who's been removed over and over again. There wasn't any argument of he understands English because he was given these things. As far as another thing that happened at that trial, crazily, was the government showed to the jury felony class four cocaine possession. I mean, how can one explain that? It can't get much more prejudicial. We come down to, even in its brief, the government says that shouldn't have happened. It comes down to, well, I would suggest it's not harmless error, and it's because we're supposed to, the instructions now on the appellate cases, is we view things from the view of the jury, not from lawyers. Well, the court found that the prior conviction was on the screen for a very, very short time, and no one likely saw it. How much, you know, we do owe deference to fact-finding. How can we say that the court's remedy of redaction was an abuse of discretion? I don't know. Help us. Well, Your Honor, the time it takes to say or to show the words felony class four cocaine possession is very short. It takes me two seconds to say it, maybe, to read it, half a second. The court doesn't really know whether the juror read it or not. And my response is, well, if it's not thought to be read, why is it being put on the screen for the jury to read in the first place? The expectation is if you put something up on the screen, people are going to read it. I think it's unrealistic to say, to any kind of degree of certainty, that nobody read that. So not only is Mr. Urania an illegal re-entrant, he's somebody with a cocaine possession. How can you get more prejudicial? I'd ask the court to evaluate it. It's all weighing. And I would just ask that the court conclude that substantial rights were, in fact, effective. Thank you. Thank you, Mr. Kennedy. Mr. Bindi. Good morning. May it please the court. The evidence of the prior deportations was never admitted by the district court for the purpose of establishing that the defendant understood English. That was not the purpose for which it was offered. It was not the purpose for which it was admitted. The district court said at the very beginning that whether or not he understood English, he is appearing before this jury with the use of interpreters to help him understand what's going on at this trial. And the purpose of the court's argument is the warning in English. Why not also give it in the language spoken by the deportee? It just seems, you know, very odd to me if we really are trying to convey to someone that he may not return. I mean, in general, it's just odd. I suppose that's true, that if you're going to convey information to someone that you're deporting regarding the fact that he's not allowed to return, that you would do it in a language that the person understands. You know, there is, Your Honor, there was evidence that on one of the occasions he, in fact, was informed that he wasn't allowed to return and that information was conveyed to him in English. There is also evidence in this record that the defendant, in conversation with the agent, the ICE agent who testified at the trial, that agent fingerprinted him and had conversation with him shortly before the trial and it was all in English. So the defendant understood some English and maybe that's why he wasn't given warnings at the time of his deportation in 2011 in Spanish. I don't know what the practice is on a regular basis. I don't know that these warnings are never given in any language other than English. I'm not sure. You know, really allowing all seven prior deportation into evidence really does seem like overkill to me. Could the government not have made the same point with fewer than seven, Your Honor? I suppose it's possible that the government could have gotten enough mileage out of the evidence with fewer than seven instances of prior deportations. Nevertheless, the issue was raised by the defendant's question of the witness on cross-examination. The government should have been allowed to rebut that implication. And I would also point out that the district court here, in conducting the 403 analysis, found that not only was the evidence relevant to a specific factual issue that had been put before the jury by the defendant, but there was also a fairly low probability of unfair prejudice. When you think about it, this is not really the sort of crime that lends itself very easily to a propensity argument, which would have been the improper use of this evidence that he's, you know, once an illegal reentrant, always an illegal reentrant. I'm not even really sure how that logic flows. The propensity question, the propensity issue, is really about confusing coincidence with something that's more than coincidence. And that's what happens when you have someone who is involved in a drug case, perhaps, who circumstances surrounding, you know, his involvement should have indicated to him that he was involved in a drug deal. He knew he was in a drug deal because he's previously been in drug deals. Once a drug dealer, always a drug dealer. I'm not even sure how that translates into an argument for propensity for this specific type of crime. Lastly, the defendant argues that the information contained on Government Exhibit 18 that was displayed to the jury was improper. Everybody agrees with that. The district court agreed that evidence of a prior felony cocaine possession was not properly before the jury. The government agrees that that was not properly before the jury, but the district court found that it was harmless error. The defendant's argument in this case seems to suggest that an error of this nature is per se reversible error, that it can never be harmless. The argument is not specific to the facts of this case. We would point out that the real issues in this case, the major contested issues in this case, were whether the defendant was actually the person who was removed in 2011. So there was an identity question and there was some question about whether or not he had ever really gotten permission to reenter because that was introduced through the evidence of a database that there's no indication that he had a legal status in this country. However brief was the entire Government Exhibit 18 in front of the jury? Time-wise, I don't know. Because it's three pages and number 13 addresses, number question and answer 13 addresses the cocaine conviction. That's, Your Honor, there were I think four pages to that exhibit. Which coincidentally are both in Spanish and English, the questions that Mr. Urena was supposed to answer. This was the one deportation that was where he was given the warnings in both languages, Your Honor. There were four pages to this exhibit, as I recall, and there were questions from Government Counsel regarding the first page. I'm not sure how many questions, but it was at that point that the sidebar was requested and that's when this was revealed and clarified and corrected. So how long was it up there? I really don't know. The District Court believed that maybe the jury hadn't seen it, but that wasn't the basis of decision. The basis of decision was not, I didn't see it, therefore the jury didn't see it. The basis of decision was this was harmless there. And so for these reasons, we respect, fully request that this Court affirm the judgment. Thank you. Thank you, Mr. Bindi. Anything further, Mr. Kennedy? You know, Your Honor, there's nothing really that I can add to what I've already said. But you alerted the Court to this document, right? Yes, Your Honor. If you want to know the circumstances around what happened is that it was a two-day trial. So at the start of the second day, the Government brought in its seven exhibits of prior reentry. And, of course, everything's going on right before trial starts. I get handed the seven exhibits with the Cochrane Possession one on the bottom, 18. And the trial's rolling and I'm trying to read seven exhibits plus the eighth one. And the Government is saying, is this exhibit number seven? I'll show you page one, I'll show you page two, here's page three. And while that's going on, I've reached, I've gone to the last exhibit. And they've concluded their exhibit display, but I've seen on the paper copy felony cocaine possession. And at that point, I immediately asked the judge for a sidebar. I, myself, didn't know whether that had been put up on the screen because I was looking at the paper copies. And that's really all I can say, Your Honor. Understood. Thank you, Counsel. Thank you. The case is taken under advisement.